IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 10, 2004 Session

## MARK K. McGEHEE v. JULIE A. McGEHEE

**Appeal from the Circuit Court for Hamilton County**
**No. 01D1915      Jacqueline E. Schulten, Judge**

**No. E2003-01555-COA-R3-CV      Filed August 12, 2004**

In this divorce case, Mark K. McGehee ("Father") appeals the Trial Court's order regarding child support, its award of primary residential parenting responsibility to Julie A. McGehee ("Mother"), the propriety of the Court's decision to amend its final decree of divorce pursuant to Mother's Tenn.R.Civ.P. 60 motion and the granting of Tenn.R.Civ.P. 11 sanctions against Father's attorney. We reverse the order of sanctions and affirm the Court's judgment in all other respects.

**Tenn.R.App.R. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part and
Reversed in Part; Case Remanded**

SHARON G. LEE, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR. and D. MICHAEL SWINEY, JJ., joined.

Jes Beard, Chattanooga, for Appellant Mark K. McGehee.

Vicki L. James, Stuart F. James and Michelle C. McFadyen, Chattanooga, for Appellee Julie A. McGehee.

### MEMORANDUM OPINION[1]

**I.**

The parties were married on July 27, 1998. One child was born of the marriage. On October 3, 2001, Father filed this action for divorce. Mother answered and filed a countercomplaint; each party filed a proposed parenting plan. Although Mother was represented by counsel at the time of

---

[1]Rule 10 of the Rules of the Court of Appeals provides that "[t]his Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial Court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

filing of her initial motions, her counsel had withdrawn by the hearing and she proceeded *pro se* at the hearing.

After hearing the parties' proof on September 16, 2002, the Trial Court issued an oral memorandum opinion from the bench and requested that Father's attorney, Jes Beard, prepare a draft of the divorce decree. Mr. Beard complied, and on December 2, 2002 the Court entered the order granting Father a divorce, dividing the parties' property, and establishing a parenting plan and child support.

On January 21, 2003, Mother, who had at that point retained other counsel, filed a motion pursuant to Tenn.R.Civ.P. 60 for relief from the Court's decree, arguing, among other things, that "the order submitted by Jes Beard does not comport with the Court's ruling from the bench, and in fact, differs in a number of material respects[.]" Mother attached a transcript of the Court's oral ruling to her Rule 60 motion, which presented a number of discrepancies between the entered divorce decree and the transcript. One of these discrepancies pointed out by Mother was that the Court had ordered Father to pay child support in the amount of $455 per month, and the order drafted by Mr. Beard and entered by the Court set the amount at $433 per month.

Mother also filed a motion for sanctions pursuant to Tenn.R.Civ.P. 11, in which she argued that "[t]he transcript clearly reveals that Mr. Beard either negligently, recklessly or intentionally misstated the Court's ruling in order to gain an unfair advantage for his client."

The Trial Court heard Mother's Rule 60 motion on February 10, 2003. A transcript of this hearing is not included in the record before us. On March 12, 2003, the Trial Court entered the order submitted by the Mother *nunc pro tunc* to December 2, 2002, which stated that "for good cause shown, the Final Decree and Parenting Plan entered in this cause on December 2, 2002, is hereby amended by substituting the entire Final Decree and Parenting Plan with the following language[.]"

After a hearing of Mother's Rule 11 motion, the Trial Court entered an order on May 12, 2003, which granted sanctions against Mr. Beard, and awarded Mother attorney's fees in the amount of $2,383.80. On appeal, Father argues that the Court erred in the amount of child support it ordered him to pay, and that it should have designated him the primary residential custodian of their child instead of Mother. Father also argues that it was error for the Trial Court to have amended its judgment under Rule 60 when more than 30 days had passed since the entry of the original decree. Mr. Beard appeals the Rule 11 sanctions imposed against him.

## II.

We first address the Tenn.R.Civ.P. 60 issue. In reviewing a trial court's decision to grant or deny relief pursuant to Tenn. R. Civ. P. 60, we give great deference to the trial court. We will not set aside the trial court's ruling unless the trial court has abused its discretion by applying an incorrect legal standard, or reached a decision which is against logic or reasoning that caused an injustice to

the party complaining. *State v. Stevens*, 78 S.W.3d 817, 832 (Tenn.2002) (*quoting State v. Shuck*, 953 S.W.2d 662, 669 (Tenn.1997)). The abuse of discretion standard does
not permit an appellate court to merely substitute its judgment for that of the trial court. *See Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn.2001).

Rule 60.02 provides relief from final judgments as follows:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken.

Significantly, in this case Father does not dispute that there are discrepancies between the draft order submitted by Mr. Beard and the oral ruling made by the Court at the conclusion of the divorce hearing. The Trial Court's ruling does not state which subsection of Rule 60 it found to be applicable. We find that under the circumstances of this case, the discrepancies between the Trial Court's oral memorandum opinion and its initial divorce decree could support a finding under Rule 60.02(1) or (2). The Trial Court could reasonably have found that the errors in the initial decree resulted from "mistake, inadvertence. . .or excusable neglect," or "misrepresentation, or other misconduct of an adverse party." Under either scenario, we are of the opinion that the Trial Court ruled properly and appropriately and did not abuse its discretion in granting Rule 60.02 relief to Mother, whose motion was timely filed within the one-year time limit provided in Rule 60.02(1) and (2).

Regarding child support, the Trial Court's amended final decree found that "[t]he father is capable of earning a gross weekly income of $599.20 as demonstrated by his current earnings, such amount giving him monthly earnings of $2,576.56." Father filed an income and expense statement showing weekly earnings of $599.20. Father testified without contradiction that subsequent to his filing of that statement, his weekly wages increased "by about $40.00." Thus, the undisputed evidence shows, and we find, that Father's weekly earnings were $639.20. The Trial Court set Father's child support payments at $455 per month, which correctly corresponds to Father's income

level under the Tennessee child support guidelines. Father's argument that the Trial Court deviated from the guidelines is without merit.

The Trial Court awarded Mother primary residential parenting responsibility. Father argues that the Court erred by not naming him the primary residential parent.

In reviewing a trial court's order regarding custody and visitation, we start with the premise that the details of custody and visitation are peculiarly within the broad discretion of the trial judge. *Edwards v. Edwards*, 501 S.W.2d 283, 291 (Tenn.Ct.App.1973). Accordingly, we will not reverse a trial court's decision regarding custody unless the record clearly demonstrates that the court has abused that discretion. *Otis v. Cambridge Mut. Fire Ins. Co.*, 850 S.W. 2d 439, 442 (Tenn. 1992). We do not substitute our judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn.1998). A trial court abuses its discretion only when it applies an incorrect legal standard, or reaches a decision which is against logic or reasoning, and causes an injustice or injury to the party complaining. *Marcus v. Marcus*, 993 S.W. 2d 596, 601 (Tenn. 1999). *State v. Shirley*, 6 S.W. 2d 243, 247 (Tenn.1999).

Tenn. Code Ann. § 36-6-106, in pertinent part, guides the courts in determining the best interests of a minor child by providing the following factors for consideration in custody disputes:

> (1) The love, affection and emotional ties existing between the
>
> parents and child;
>
> (2) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
>
> (3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment; . . .
>
> (4) The stability of the family unit of the parents;
>
> (5) The mental and physical health of the parents;
>
> (6) The home, school and community record of the child;
>
> *    *    *
>
> (9) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child; and
>
> (10) Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent,

consistent with the best interest of the child.

In support of his argument regarding child custody, Father cites only subsection (10) of the above statute, asserting that Mother has not demonstrated the "willingness and ability. . .to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent." Tenn. Code Ann. § 36-6-106(a)(10). The evidence Father points to in support of this assertion is the transcript of a tape recording Father apparently made of the parties engaged in an argument. This transcript was presented to the Trial Court as well, and there is no indication in the record that the Court did not give it due consideration along with the rest of the evidence.

While it cannot be said that the transcript of the recorded argument serves to emphasize the more positive aspects of Mother's personality, it does not lead us to conclude the evidence preponderates against the Court's ruling that "it is in the best interests of the child that the Mother remain the primary caretaker of the child." Based on our review of the record as a whole and the applicable statutory factors, we do not find that the Trial Court abused its broad discretion in this case regarding child custody.

We now turn to the issue of the sanctions imposed under Rule 11. Tenn.R.Civ.P. 11.03 contains specific procedural requirements which provide in relevant part as follows:

> If, after notice and a reasonable opportunity to respond, the court determines that subdivision 11.02 has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision 11.02 or are responsible for the violation.
>
> (1) **How Initiated**.
>
> (a) *By Motion*. A motion for sanctions under this rule shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate subdivision 11.02. *It shall be served as provided in Rule 5, but shall not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.* If warranted, the court may award to the party prevailing on the motion the reasonable expenses and attorney's fees incurred in presenting or opposing the motion. Absent exceptional circumstances, a law firm shall be held jointly responsible for violations committed by its partners, associates, and employees.[Emphasis added].

The italicized portion of the above rule is known as the 21-day "safe harbor" provision. It serves the important dual role of providing attorneys notice and fair warning that an adversary is proposing seeking sanctions, and acting as a deterrent to frivolous, unsupported or otherwise improper pleadings being filed with the court in the first place.

On appeal, Mr. Beard argues that "the Trial Court granted Rule 11 sanctions in the amount of $2,380, despite the fact that the motion for sanctions was made in the absence of any effort by the Mother (then the movant) or her counsel to ever ask Appellant's counsel to change anything or to correct anything at issue filed with the Trial Court."

It is clear that the order Mr. Beard submitted to the Court for entry on December 2, 2002, was inaccurate. It is equally clear that Mr. Beard had an obligation to submit an order that was accurate. However, it does not appear from the record that Mother served Mr. Beard with the required notice of her Rule 11 motion prior to filing it with the Trial Court. This Court has recently noted that "[a]lthough pro se litigants are nearly always accorded more leniency than trained attorneys, they are not excused from compliance with our rules of procedure." *Stigall v. Lyle*, 119 S.W.3d 701, 706 (Tenn.App.2003).

Furthermore, Rule 11.03(3) requires as follows:

> **Order**. When imposing sanctions, the court shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed.

The Trial Court's order granting sanctions states in its entirety:

> This cause having come before the court on the motion of the Defendant, Julie McGehee on February 24, 2003 requesting that this Court award her sanctions and attorney's fees, and after hearing argument of counsel, and upon submission of an Affidavit establishing the reasonableness and necessity of the legal expenses incurred by Defendant, the Court hereby ORDERS, ADJUDGES AND DECREES that the motion is well taken and awards the defendant attorney fees in the amount of $2383.80 to be paid to Ms. McGehee by the Plaintiff's counsel Jes Beard no later than thirty (30) days from the date of entry of this order, for which execution may issue.

This Court was presented with a situation similar to the present case in *McGahey v. McGahey*, 2003 WL 22272350, 2003 Tenn.App. LEXIS 714, No. W2003-01051-COA-R3-CV (Tenn.App.W.S. filed October 1, 2003). The *McGahey* court ruled as follows:

As cited *supra*, Rule 11.03(3), Tenn. R. Civ. P., clearly requires the Trial Court to "describe the conduct determined to constitute a violation of [Rule 11] and explain the basis for the sanction imposed." Here, the Trial Court states that the case "was settled with advice of counsel," and that "the allegations in the petition to alter or amend are unfounded by proof." While the Trial Court found that there was not sufficient proof to show that Ms. Hoover was incompetent, the fact that Ms. Shackelford lost the case does not constitute a basis for Rule 11 sanctions. The Trial Court failed to make a specific finding that Ms. Shackelford violated Rule 11 by failing to investigate the facts upon which the Motion was made and by failing to have evidentiary support for the allegations. Such failure to explain is in direct violation of Rule 11.03(3), Tenn.R. Civ. P. Therefore, we reverse the Order of the Trial Court to the extent that it imposes Rule 11 sanctions upon the Appellant and her counsel. *McGahey,* 2003 WL 22272350 at *6.

The Trial Court's order in the present case says even less than the order in *McGahey*; it states only that the motion is "well taken." We do not condone the conduct of Appellant's counsel in submitting an inaccurate order to the Trial Court, but because the record fails to show that Mother complied with the safe harbor requirement of Rule 11.03(1)(a), and the Trial Court did not comply with Rule 11.03(3), we reverse the order of sanctions against Mr. Beard.[2]

## III.

We reverse the Trial Court's order imposing Rule 11 sanctions on Father's attorney. We affirm the remainder of the Trial Court's judgment, and remand the case for collection of costs below. Costs on appeal are assessed against the Appellant, Mark K. McGehee.

_____
**SHARON G. LEE, JUDGE**

---

[2] We do not wish to imply by this action that reversal of Rule 11 sanctions is always required or warranted when a Trial Court fails to comply with 11.03(3). There could certainly arise a situation which would warrant vacating a court's order of sanctions and remanding the case for further findings. We simply find, as did the *McGahey* court, that reversal is the appropriate measure here.